May it please the Court, my name is David Browery. I represent the appellant Jade LaRoche who asks that this Court vacate his conviction for assaulting, resisting a Federal officer with physical contact. In the alternative, we ask that this matter be remanded for a new trial, or in the second alternative, that this matter be remanded for a new sentencing. I'd like to begin the discussion today with the second issue raised, some of the evidentiary issues that occurred at trial. And first, I'd like to draw the Court's attention to the four prior convictions that were admitted into evidence near the close of the government's case in chief. There were four convictions for similar crimes, resisting arrest, simple assault on law enforcement, those sorts of matters, dating back to 2009. These were admitted under Rule 404B of evidence for the purpose of establishing knowledge, intent, or lack of mistake. However, in this case, those issues did not exist, nor were they controverted. There was no discussion by the defendant that he lacked intent to flee. But there was a general denial here, not guilty plea, right? So the burden shifts, I mean, the burden's with the government. The government needs to prove mens rea or intent, right? Yes, to take an action. However, not to Was there an offer to stipulate in regard to no accident and mistake and so forth? There was a discussion in the pretrial hearing at the close. The government quotes this in their brief, that there is no dispute about intent. Now, on the mistake, that was never raised. Mr. LaRoche's position was that he simply did not come into contact with the officer. But no, there was no stipulation on that matter. And, Your Honor, you raised the question about the government's burden of proof. And I would contend that if we take that position, that whenever intent is generally denied, which has to happen for a case-to-reach trial for the rules of evidence to come into play, then the exception swallows the rule under 404B. Because intent would always be an issue. All of these prior convictions would always come in. Are you objecting to the nature of the notice that was given? Not to the nature of the notice. Because it looks to me like the 404 notice in this case does not comply with the amended rule, that Mr. Morley was operating as though the world existed before the most recent amendments to the rules on notice, right? And I don't know, I couldn't tell if that issue was preserved or if that issue was raised below. Because this is exactly, you know, the reason why we're standing here is exactly why they amended the rule in the first instance, which was to say, okay, you can't just tell us, here's the rule, we're offering it for those reasons. That you're supposed to say, this conviction is this, and these are the reasons why it fits within intent. Or this is the reason why that conviction is important on the issue of absence of mistake, right? And none of that's laid out here. So, I mean, it maybe hasn't been preserved, and I think that's actually probable here. But I just do have to just note for the record, it seems like Mr. Morley was operating in a world where he just didn't read the rules for a year. I would agree with the Court that it's not specifically raised. It's more generally objected to. So what did the government actually say was the reason why they needed these four convictions, each of them? You know, because, you know, there's a lot of times the judge will say one's enough, two's enough, but all four come in. Why did the government say that they needed all four? Essentially, the rationale that Judge Kobus was talking about, that he's denied intent, we need to prove it. Did you argue cumulativeness in response to that? I believe we did. I believe that may have been in the transcript. I don't precisely recall. Yeah, it's in our briefing. I read parts of it. I never studied the whole thing. Right. And this is the danger of this sort of situation is that you don't get carte blanche when someone denies a case you're going to trial. You don't get carte blanche to present every bad thing about them under 404B. I'd also note that in the Harrison case decided earlier this week, Judge Strauss noted some of these concerns as well in his concurrence that essentially the exception is swallow the rule now. And we would ask that this matter be reversed on that basis for retrial. What's your best case for reversing? Weir. It's a 1974 case that's cited in our record. In that matter, it was a 404B case. It wasn't specifically prior convictions. It was other acts under 404B. It's a 1974 case dealing with communications regarding threats to a potential person who knew about the crime, that sort of thing. In addition, the Harrison concurrence that just came out, there seems to be a disconnection between 404B's intended purpose and how it was used here in this case. And again... Well, we've had a recent case where the government was reversed for not being, for insisting on 12 convictions or none. That's why the cumulative rejection is important. But it wasn't done. And four, of course, is not as inherently prejudicial as 12. I would note that the defendant did file an objection overall to this. It was a briefed matter. I know that the... The overall issue is preserved, but you've got to be specific as to arguments. The appellant counsel here before you was not the trial counsel, either myself... I didn't know that. ...or Mr. Colliner. In addition, the cumulative effect of all of these was highly prejudicial and should have been excluded. I'd like to shift to the other issue as well. Regarding testimony regarding an encounter Mr. LaRoche had with another law enforcement officer in September of 2021. So this is not the victim. This is about six weeks earlier. This starts on the trial transcript at page 295 and continues in through about 300. The government begins asking questions about drug paraphernalia. There's objections made by defense counsel. The court allows it to come in as impeachment. At that time, the government does not disabuse the court of its conclusion that it jumped to. The government had no intent of presenting this as impeachment. They've made no argument how this could have been admitted at all. If this is 404B, it's bad acts that are highly prejudicial and have nothing to do with anything other than to poison the jury. And this case is a he-sit. What evidence was this? This is the encounter with Moran regarding the plastic baggies, the pipe, the glass pipe, and the contents of the bag. What was that? The encounter with who? I didn't... Officer Moran. M-O-R-A-N. So what was wrong? They were discussing other criminal activity and implying that Mr. LaRoche had been dealing with drugs, that sort of thing. What's the error? I mean, I've read the transcript of the video. The video is with Officer Schmite. Yes, but it discusses his conversation with the defendant at the call. Now, how does this play into trial evidence? Again, a lot of discussion about Officer Moran. I haven't read the trial transcript. You've lost me. Okay. This issue, I do not understand from oral argument. Sure, sure. Moran was the officer he had contact with. I know he was. During the course of trial, cross-examination, the prosecutor begins asking Mr. LaRoche about that encounter. Asking about, well, Moran found this on you, he found that on you, these sorts of things, which Mr. LaRoche denied. Those circumstances had no bearing on any of the issues in this case. And when objection was made, the court allowed the testimony without asking the government why they were talking about these things. And I'd note that... But didn't the district court ask if Moran was going to be called as an impeachment witness? That was after this testimony had come in, and there was no curative instruction to remedy the information that had already come in and poisoned the jury. In addition, the government had argued in Docket 54 on page 5 that it only intended to give reputation evidence as discussed in that document, which was other matters, not the contact with Moran, not these baggies, backpack, glass pipe, those sorts of things. And so this was entirely a surprise. It was not impeachment. It was simply to poison the well. And I see that my time is running down, but that's the problem here is that this was he said, he said. Credibility is an issue. We know the jury rejected the credibility of the government's witnesses to a large extent. And so Mr. LaRoche did not receive a fair shake. He'd previously been charged with similar crimes and been acquitted. He didn't get a fair shake with this jury. If you look at your sort of both arguments that have been made here today, you know, the judge did instruct that he wasn't on trial for any other crimes or any other acts. And, you know, usually that's enough. And, you know, there's, trials are never perfect and there are rulings that are, that just happen. And was there any undue attention brought to Moran's testimony during the closing arguments or otherwise drawing it to the attention of the jury as a decisional point? They were talking about these issues. I don't recall the specific words off the top of my head, but in total, this was just all piling on. Error after error, prejudice after prejudice, where it wasn't a fair trial. You know, and looking at Smith-Henley's opinion and we're, and I just took another look at it because I thought this was true as you were talking about it, but that was a weird case in all ways, right? I mean, the judge ruled three times that he wasn't going to let this prior criminal conduct in. And then really literally the prosecutor just wore him down. And the district judge actually admitted that. He says, oh man, we've wasted enough time on this, you know, I'll just let it in. Kind of threw up his hands and walked away. And the opinion that Judge Henley wrote really just says, you know, feel sorry for the judge. Judge did a great job right up until that time and then he took a chance and he guessed wrong. You know, that's the best case you've got is the judge guessed wrong? I think it's the case law is very detrimental here on these issues. The application of 404B has difficulty here because the door is so wide open. And I understand that the precedent's control, however, there seems to have, things seem to have gone too far. Got it. The exception has swallowed the rule. Shoehorning, as Judge Strass said in his concurrence. It needs to be reexamined. Here you can see the prejudice, much more so than in Harrison, because he said, he said, what happened in the dark? Credibility matters. Getting this information that they've been convicted of it before doesn't say anything about intent or mistake. It's just piling on, this is a bad guy. He uses drugs. He's got an arrest warrant. All of these I've got more questions on the custody issue, which of course is preserved. Were the interview statements introduced at trial? Yes. Yeah. The entire transcript that's as an exhibit. Which of those, what incriminating statements were likely to be elicited? When he was asking about the warrant, he was asking what the warrant's about. What crime did you commit? Why are you being arrested? Okay. What, here's to me the bottom line. What case says an officer seeking to execute a warrant he knows nothing about, can't ask about it? He did know about it. These are not booking type questions, confirming it's the right person, that sort of thing. Yeah. I asked you a question. What if the suspect might say, I've taken care of that? Right. So you're arguing that it is per se categorical, without exception, improper under the Fourth Amendment to raise the question when the officer might get information that would be to the suspect's advantage. And I ask, what case says that? The officer had already confirmed that it was a valid warrant. However, I would suggest the case speaks to some of these issues, ORR or ORR. I don't know if that was cited. Then we need a 28-J letter. Yeah. Or out of what court? The Eighth Circuit. And when? Where some of these issues were custody. In that case, I can briefly give you, if you'll allow me the time, that Mr. You can send us the case by 28-J letter. Okay. If what you want to do tell us all about that case. And also, what custody finding, in your view, was clearly erroneous? The finding that he was not in custody, even though they weren't. That's the general. No. I think that's a question of law. What supporting facts, what facts that the court thought supported the custody conclusion is clearly erroneous. Sure. Custody is determined objectively. You do not consider the subject. Answer the question, because your time's up. The subjective intent of the officer is improper to consider when determining the custody question. It is clearly erroneous to rely on that factor. All right. So there's no finding, in other words. I mean, that's a legal issue. I'm just asking you if the court, if Judge Lange made a clearly erroneous finding with regard to the alleged custodial facts. I would say the reasonableness of a person's belief of being in custody or not. That is a reasonableness is a legal question. I believe reasonableness is a factual question in terms of, it's a mixed question, obviously, in this setting. But what a reasonable person would do is what we typically leave for a jury in other contexts. Is it your argument that if an officer tells a defendant that there's a warrant for his arrest, but has not yet executed that warrant and says, I'm going to arrest you, that a reasonable person would not believe they're free to leave? Is that what you're arguing? Correct. And that's a fact finding that was clearly erroneous in this particular case? Correct. Or a mixed question of fact and law? Right. Okay. This case is different than others because the arrest warrant was specifically referenced and said, we're acting on it. That's sufficient for a reasonable person to go, I can't leave. They're here to do it. Well, he kind of must have thought he could leave because he certainly attempted to. Or a reasonable person knows that they're running away. They're fleeing. I'm sorry. That was not charitable. I mean, it's almost the — it's criminal liability if you run away. They know that at that point. And so it's unreasonable to conclude that a reasonable person would not reach that conclusion, that they were not free to leave. Thank you. Thank you, Your Honors. Mr. Colliner? May it please the Court, my colleague, Mr. Berari, Kevin Colliner from the U.S. Attorney's Office, representing the United States in this case. We are asking that this conviction be affirmed and that the sentence be affirmed in all respects. I'm going to sort of start where the Court left off on the custody question, the factual questions here, both in the report and recommendations and in the order denying suppression. The Court was very clear about the facts. I mean, the mom called the dispatch here. The mom called Mr. LaRoche into the room. The officer didn't direct his movements. He didn't draw a taser or a weapon until after he ran, after this conversation was over. His baton remained holstered. His gun remained holstered. There's no threat or intimidation. He only ran after he said, you're under arrest. Your Honor, there's no case that says an officer can't say, hey, you know, you got a warrant. I think that's the quote. You know you got that a directive to give the person Miranda, if anything further said. There's also the nature here of the inquiry as much as it was. Really, the only substantive question that's being asked here by the officer is this, you know, you got a warrant, right? It was about 14 minutes of conversation, but it's mostly led by Mr. LaRoche, who, Judge Erickson, to your point, I mean, that is the elephant in the room, that he did think he could leave because he fled here, but the other thing he thought he could do is talk his way out of that warrant, right? And that's what he was doing. That's the 14 minutes. If you look at that transcript, there's a lot of volunteering of statements at that point, right? And not much interrogation in the classic sense. Really nothing in the classic sense. Nothing intended to elicit an incriminating response, especially as it is to this conviction. It's a, he's trying to say something that will have the same effect as that I took care of that. Right. Which could have, in fact, been true. Could have been true. I mean, he did. Yeah. And he was sort of saying, you know, I told Officer Moran I'm working on it. And in fairness. I need more time. Yeah. And in fairness, Officer Moran testified at the sentencing. There was some truth to it. He had given the guy a break on the warrant, not two weeks back, but six weeks back. So on and so forth. I want to go to this, the next, to the last point about this impeachment regarding the encounter with Officer Moran. What was going on here is the defendant was on the stand and the prosecutor is cross-examining and he's trying to elicit statements from the defendant that the prosecutor knows the defendant is going to lie about. And so it's this whole question about Officer Moran and that encounter. And he does go down this road about, tell me about that encounter and what's found there and aren't there drugs found there. The defendant denies that. There's an objection. It's sustained. The prosecutor moves on. In other words, the last thing the jury heard was the defendant denying that this contraband was his. We also just heard an argument. And we heard in the sentencing memorandum, which I think is Doc 51 or 91, their argument. So then the government then claims, well, that's perjury, right? That requires an obstruction of justice enhancement because he lied on the stand. That was denied at sentencing. But the defense argues that wasn't material, right? That's how they overcame that obstruction enhancement. In other words, how could it be material in terms of the statement at trial but not material when it comes to obstruction? So it clearly wasn't material. The best that, I guess the best argument they have is the jury heard some information about some drug use, but the defendant was denying it and the prosecutor moved on. I'm going to talk about the 404B stuff. The notice issue was not preserved for appeal. I read the notice, but honestly, Your Honor, I wasn't thinking about that issue because it wasn't raised. It wasn't raised at the pretrial conference either.  So I hear what the Court's saying and fair enough, but it's not at issue on this appeal. We have four prior convictions here. The government wanted to put in more. The Court denied some of those, limited to only these sorts of convictions. And what were the convictions? They were for resisting arrest and assaulting officers. They were, you can't get more directly on point than that in this case. In the pretrial conference. What was, but was the defense offering up, I never intended to resist or strike the officer? Did they actually, was that what they argued? I thought they were arguing that I never touched him and therefore I can't be convicted. But isn't that another way of saying the same thing? I mean, it goes, the jury was instructed that they had to find that the defendant acted voluntarily and willfully with respect to each element. That goes to the general denial that comes with a not guilty verdict or not guilty plea. And the defense here is, you know, I didn't touch him or said another way, I didn't mean to touch him if I touched him. And certainly I didn't cause him serious bodily injury. Yeah, and I get the, I didn't mean to touch him. That is an intent issue and then that becomes relevant. But I kind of thought that the thrust of the argument was no contact ever took place. At which point intent is not the issue, except to the extent intent is always an issue when you enter up a general denial. Right, and the government had the burden of proving it, I guess, whether it was part of the defense or not. But you would agree that that would set the contours of the relevance of the evidence, right? I mean, if you had a case where it was plain that the only issue is, I never had any contact with the officer, did not touch him, that's just the only issue we're trying at all. Right. Then, you know, the question is, what's enough? Is zero the right answer or one or two? Where does it become an abuse of discretion? You might have that case, but I don't think this is that one. I mean, I think this one was anything we can find in the kitchen sink, we'll find it and see what works. But they cross-examined the chiropractor at length. They had all sorts of diagrams and the defense's exhibits were largely about, you know, diagramming the house and so forth. It was, you know, it was a good attempt by a defense in a case where you got an interaction essentially on video, shaky video. It's shaky. The video's really fairly inconclusive on the contact piece because the question is, was he struck? We get the, you know, the face is right there. It happens that quick and you can't tell was he struck or did he just drop his taser, you know, move his hand and you don't really know. But a reasonable jury could infer from that video that the hand moved because he was hit, right? Yeah. Well, that was the officer's testimony, right? And there's this question that's being raised on appeal about whether the jury's determination that the lesser included was the right count to find guilty, that that automatically means that the jury found that the officer wasn't credible. Of course, that's not the way this court reviews a jury's verdict decision. In fact, this court's very clear that we don't delve into the minds of juries to determine why they chose, say, a lesser included. Their argument is that the only possibility here is that the jury didn't find that he was injured, right? Well, you know, that's certainly a possibility. Another possibility is that the jury found, couldn't reach consensus on whether he knowingly and intentionally injured the officer, right? Knowingly and intentionally contacted him, but perhaps he didn't mean to injure him, right? Even the officer's own testimony was that he was contacted and fell against some appliances in the kitchen. So it's also possible that the jury, you know, was finding, look, we know he contacted him, but he didn't mean to hurt him. That's also a possibility. I just say that because that argument about the credibility of the officer in the jury's verdict kind of permeates a lot of this brief, and I don't think that's the place of this. Well, this court has said it's not the place of this court to delve into why juries choose one count over another. I think I've addressed all the issues that were raised here in argument today, and I think the rest of the issues are certainly addressed in our brief. If the court has any questions, I'm happy to answer them. I have some time left. If not, I'll take my seat. Thank you, Your Honors. Thank you. Thank you. Is there anything by all time? I think we understand the issues and the case has been thoroughly argued.